ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>UTTAM HALDER | Criminal Action No.<br><br>1:22-CR-0034<br><br>Superseding Information |

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT ONE
(Conspiracy)
18 U.S.C. § 371

1. Beginning on a date unknown, but at least by in or about January 2015, and continuing through on or about January 8, 2021, in the Northern District of Georgia and elsewhere, the defendant, UTTAM HALDER, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown, to commit an offense against the United States, namely, to knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, and with intent to defraud, caused interstate and foreign wire communications to be made, in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

## Background

At all relevant times during this Information:

2. The Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the Food Stamp Program, was a program administered by the United States Department of Agriculture ("USDA") through the Food and Nutrition Service ("FNS"). Its purpose is to alleviate hunger and malnutrition among low and middle income families by providing food stamp benefits. In Georgia, the SNAP program was administered by the Georgia Department of Human Services ("DHS"). SNAP works as follows:

   a. To participate as a vendor in SNAP, a retail business must submit a "Food Stamp Program Application for Stores" (referred to as a "SNAP application" below) and the owner/manager of the business must meet certain requirements.

   b. As part of the application process, the owner of the business must sign paperwork that informs the owner that it is a violation of SNAP regulations to trade cash for SNAP benefits or knowingly accept SNAP benefits from people not authorized to use them. The owner certifies that he has read, understands, and agrees to abide by SNAP rules. Specifically, the owner must certify that it is his responsibility

to ensure that the SNAP training materials are reviewed by all of the firm's owners and employees and that all employees will follow SNAP regulations. Participants also must certify their awareness that violations of SNAP rules may result in federal prosecution and "accept responsibility on behalf of the firm for violations of the [SNAP] regulations, including those committed by any of the firm's employees . . . . These include violations such as, but not limited to: Trading cash for [SNAP] benefits (i.e., trafficking). . . ."

c. Regulations promulgated by the USDA mandate that vendor-participants in SNAP may only accept food stamp benefits in exchange for the purchase of eligible food items. Food stamp benefits may not be purchased or sold in exchange for cash. The federal regulations governing SNAP provide that SNAP benefits may "be used only . . . to purchase eligible food for the household, which includes, for certain households, the purchase of prepared meals." 7 C.F.R. § 274.7(a). And except for the limited circumstance of providing change in an amount less than $1, SNAP benefits may not be exchanged for cash. 7 C.F.R. § 278.2.

3

d. Food stamp benefits are deposited onto an Electronic Benefit Transfer ("EBT") card, which works like a pre-paid debit card. Like a debit card, an EBT card has a magnetic stripe encoded on the back. After calculating the subtotal, the cashier or recipient swipes the EBT card through a card reader or point of sale terminal to begin the transaction. The recipient then enters his or her PIN number onto a keypad. The sale is authorized if sufficient funds are available on the EBT card. Funds are then electronically transferred from the recipient's food stamp account to the processing store's account.

e. Once a vendor is approved, it is issued a unique seven-digit FNS account number, which shows that the retailer is authorized to accept payments issued through SNAP. The retail business then may obtain EBT terminals from third party processors (e.g. FISERV and Fifth Third Bank). The federal government is not responsible for issuing EBT terminals. EBT terminals are used for reading EBT cards and executing EBT transactions. To conduct an EBT transaction, an EBT terminal must be associated with a FNS number.

3. To legally participate in SNAP, a retail store must have its own lawfully obtained FNS number; it cannot use an FNS number belonging to another store.

A store owner cannot transfer the SNAP permit or FNS number to someone else or to another location. If a store changes ownership or closes, the owner must notify FNS.

4. EBT transactions for SNAP executed in the state of Georgia require sending electronic communications by interstate wires between third party processors that provision EBT terminals (such as FISERV and Fifth Third Bank), banks (including the retail store's bank), and the Federal Reserve Bank of Richmond, located in Richmond, Virginia. The EBT cardholder's pin, which is entered into the EBT terminal by the cardholder or the retail store employee in Georgia, results in the transfer of funds from the Federal Reserve Bank of Richmond to the retail store's bank account.

5. Big Daddy's Discount Meat was a grocery store located in Atlanta, Georgia in the Northern District of Georgia. On or about March 10, 2014, HALDER submitted a SNAP application to the USDA for the store, in which he agreed to follow SNAP rules and regulations.

### Manner and Means

6. The defendant, UTTAM HALDER, filed corporate registration documents for Star Alliance LLC, d/b/a Big Daddy's Discount Meats, with the Georgia Secretary of State.

5

7. The defendant, UTTAM HALDER, caused a SNAP application to be submitted for Big Daddy's Discount Meats.

8. The defendant, UTTAM HALDER, managed and operated Big Daddy's Discount Meats as its true owner. In this role, HALDER was responsible for hiring and training store employees and overseeing its EBT terminals.

9. The defendant, UTTAM HALDER, provided EBT terminals to other stores, including Food World, a grocery store located in southeast Atlanta, in knowing violation of the terms of SNAP. After receiving EBT terminals registered to Big Daddy's Discount Meats, those stores made cash payments to customers in return for the use of the customers' EBT cards, thereby falsely representing that eligible food items had been legitimately exchanged for the use of the EBT cards. Based on his loan of the EBT terminals, HALDER split a portion of the profits from these fraudulent EBT transactions.

10. The defendant, UTTAM HALDER, and others known and unknown, redeemed more than $12 million in SNAP benefits from January 2015 through December 2020, a redemption amount that vastly exceeded the redemptions at nearby grocery stores during the same time period.

## Overt Acts

11. In furtherance of the conspiracy, and to effect the purpose and objects thereof, the defendant, UTTAM HALDER, and others committed various overt acts in the Northern District of Georgia and elsewhere, including, but not limited to, the following:

    a. On or about September 4, 2020, a clerk at Food World agreed to exchange $40 cash for EBT benefits. The customer gave the EBT card to the clerk, who charged the EBT card for $81.22 using a terminal registered to Big Daddy's Discount Meats. In exchange, the clerk provided $40 cash and no food items to the customer.

    b. On or about September 21, 2020, a clerk at Food World agreed to exchange $50 cash for EBT benefits. The customer gave the EBT card to the clerk, who charged the EBT card for $102.89 using a terminal registered to Big Daddy's Discount Meats. In exchange, the clerk provided $50 cash and no food items to the customer.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Failure to Appear)
18 U.S.C. § 3146

12. Between on or about December 7, 2022, and on or about February 28, 2023, in the Northern District of Georgia and elsewhere, the defendant, UTTAM HALDER, having been charged with a violation of Title 18, United States Code, Section 371, and having been released pursuant to Chapter 207 of Title 18, United States Code, in connection with the aforementioned criminal charge, did knowingly fail to appear as required for a pretrial conference in Case No. 1:22-CR-00034 before the Honorable Michael L. Brown on December 7, 2022 and February 28, 2023, all in violation of Title 18, United States Code, Sections 3146(a)(1) and 3146(b)(1)(A)(ii).

## FORFEITURE PROVISION

13. Upon conviction of the offense alleged in Count One of this Information, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(c) and Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of said violations, including but not limited to the following:

a. Money Judgment: A sum of money in United States currency representing the amount of proceeds obtained as a result of the offense for which each defendant is convicted.

b. Funds:

   i. $9,300.00 in United States Currency seized from Uttam Halder at the Hartsfield-Jackson Atlanta International Airport located at 6000 N. Terminal Parkway, Atlanta, Georgia 30320;

   ii. $8,737.00 in United States Currency seized from Big Daddy's Discount Meats, located at 1265 Lee Street SW, Atlanta, Georgia 30310;

   iii. $11,424.00 in United States Currency seized from Food World, located at 2177 Flat Shoals Road SE, Atlanta, Georgia 30316; and

   iv. $65,404 in United States Currency seized from Big Brother Mini Supermarket, located at 400 Amal Drive SW, Atlanta, Georgia 30315.

14. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; and

   e. has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

RYAN K. BUCHANAN
*United States Attorney*

*/s/ Nathan P. Kitchens*

NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930

600 U.S. Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181