IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | Criminal Action No. |
|---|---|
| v. | 1:22-CR-034-MLB |
| UTTAM HALDER | **Under Seal** |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its counsel, Ryan K. Buchanan, United States Attorney, and Nathan P. Kitchens, Assistant United States Attorney for the Northern District of Georgia, hereby submits this Sentencing Memorandum.

### INTRODUCTION

As the owner and operator of Big Daddy's Discount Meats, Uttam Halder applied to become an authorized vendor of the Supplemental Nutrition Assistance Program ("SNAP"), a critical government benefits program designed to alleviate hunger among low- and middle-income families. PSR ¶¶ 10, 15. In doing so, Mr. Halder undertook a solemn responsibility: to safeguard SNAP benefits by abiding by SNAP rules and ensuring that all employees would follow such rules. *Id.* ¶ 10(b). But Mr. Halder abused that trust with profound consequences for the government and the recipients who rely on SNAP benefits.

1

Mr. Halder loaned multiple EBT terminals to two other stores, Big Brother Supermarket and Food World, and claimed a cut of the profits even after he realized that those stores were making cash payments to customers in return for the fraudulent use of their EBT cards. *Id.* ¶¶ 37-38, 46-47, 62-64. The cost to the government was immense: EBT terminals registered to Big Daddy's Discount Meats redeemed more than $12.5 million in SNAP benefits in roughly six years, a sum that surpassed the average SNAP redemptions at nearby meat markets by more than $10 million. *Id.* ¶¶ 67, 75. But the true toll of his fraud is measured by the incalculable harm caused to needy families trying to make ends meet who sold their SNAP benefits for a fraction of their value.

While facing charges for his fraudulent scheme, Mr. Halder compounded his harm by violating his bond conditions and becoming a fugitive. *Id.* ¶¶ 68–72. Mr. Halder was only captured after fleeing to Mexico and attempting to travel to Istanbul on a counterfeit Mexican passport. *Id.* ¶ 72.

Based on a full consideration of the 18 U.S.C. § 3553(a) factors, including the grave seriousness of his criminal conduct and the need for general deterrence, Mr. Halder's conduct justifies a total sentence of 72 months' imprisonment on both counts.

# ARGUMENT

## I. Mr. Halder should receive a two-level enhancement for abuse of public trust pursuant to USSG § 3B1.3.

The PSR correctly assesses that Mr. Halder should receive a two-level enhancement for violating the public trust placed in him to ensure that Big Daddy's Discount Meats would abide by SNAP rules. PSR ¶ 81.

When Mr. Halder applied to become an authorized SNAP vendor, he accepted a position of public trust based on the rules and regulations governing his participation in SNAP. The SNAP application expressly entrusts the manager of each SNAP vendor to abide by its rules and regulations and to train its employees to do the same. *Id.* ¶ 10(b). The application also required each manager to train his or her employees—the USDA itself did not, and could not, undertake to train employees participating in SNAP. *Id.*

In *United States v. Sarsour*, 271 F. App'x 923, 927–28 (11th Cir. 2008), the Eleventh Circuit affirmed the application of the USSG § 3B1.3 enhancement under plain error review based on the defendant's participation in the USDA food stamp program. The Eleventh Circuit reasoned that the food stamp program does not use a third party to "determine whether the use of the food stamp was for an acceptable item" or to "examine and review the underlying validity of each food stamp request." *Id.* at 928. The Court also noted that the defendant "had to receive approval from the USDA to participate in the food

3

stamp program, and that approval allowed him to engage in food stamp fraud." *Id.*

The same is true here. There is no third-party oversight of the propriety of each EBT redemption—the USDA trusts each vendor to abide by its representations that it will follow SNAP rules and to verify that EBT redemptions were used for SNAP-eligible items. And Big Daddy's Discount Meats was only able to receive approval to participate in SNAP after the USDA approved its application submitted by Mr. Halder. The USDA trusted Mr. Halder to follow SNAP rules when seeking redemption, and he abused this trust by loaning his EBT terminals contrary to SNAP rules, with knowledge that those terminals were being used for fraudulent SNAP redemptions. Accordingly, the PSR correctly applies the two-level enhancement under USSG § 3B1.3 against Mr. Halder.

**II.     The Seriousness of the Offense and Need for General Deterrence Requires a Meaningful Custodial Sentence under 18 U.S.C. § 3553(a).**

Mr. Halder engaged in an extensive fraudulent scheme that was conducted with deliberation over a lengthy period and that took in millions of dollars. This fraud victimized not only the USDA, but also the needy families who were paid a fraction of the value of their SNAP benefits while Mr. Halder profited. The fraud stopped only when federal agents executed a search warrant at Big

4

Daddy's Discount Meats, and Mr. Halder then sought to escape justice by fleeing to Mexico while facing charges. The government intends to highlight the seriousness of Mr. Halder's offenses based on the sophistication of the scheme, the lengthy duration of the fraud, and the gravity of the harm as part of its discussion of the Section 3553(a) factors at the sentencing hearing.

The government submits that a substantial prison sentence is also necessary based on the need for general deterrence against further criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B). Although there is a low risk that Mr. Halder will re-offend, the substantial scale of his fraud supports a sentence that recognizes an "important goal of sentencing in a white-collar crime prosecution: the need for general deterrence." *United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013). The Eleventh Circuit has recognized that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation marks and alteration omitted). The Eleventh Circuit in *Kuhlman* "encourage[d] our district court colleagues to keep in mind that . . . '[c]riminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.'" 711 F.3d at 1329 (quoting

5

*United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999)); *see also United States v. Hayes*, 762 F.3d 1300, 1311 (11th Cir. 2014) (reversing downward variance to probation from guidelines range of 41–51 months when "the sentences do not provide for general deterrence because [t]he threat of spending time on probation simply does not, and cannot, provide the same level of deterrence as can the threat of incarceration in a federal penitentiary for a meaningful period of time" (quotation marks omitted, alteration in original)).

The need for general deterrence is particularly important here given the limited oversight of SNAP vendors and the vast amount of public money entrusted to them. *See United States v. Sufi*, 455 F. App'x 672, 678 (6th Cir. 2012) (affirming above-guidelines 60-month sentence for $400,000 food stamp and WIC fraud scheme, reasoning that "deterrence and protection of the public were factors because [defendant] had preyed on the public—both the public fisc and the individuals who came to his store" (quotation marks omitted)). A substantial prison sentence would send a strong message that SNAP vendors cannot abuse the trust placed in them to request fraudulent redemptions at the expense of the public and the needy families who depend on food stamp benefits.

Sentencing Mr. Halder to the statutory maximum of 60 months' imprisonment on Count One, with a consecutive sentence of 12 months' imprisonment on Count Two, would nearly double the sentence imposed on co-

conspirator Paltu Roy, but a higher sentence is warranted based on their disparate conduct before and after facing charges. First, in the underlying offense, Mr. Halder had a more culpable role because he loaned his EBT terminals to two stores with knowledge that they were both fraudulently redeeming SNAP benefits. PSR ¶¶ 37-38, 46-47, 62-64. As a result of his conduct, the USDA lost more than $10 million in fraudulent redemptions. *Id.* ¶ 67. Mr. Roy operated only one store, Big Brother Supermarket, *id.* ¶ 58, and he was held responsible for roughly $3 million in fraudulent redemptions, a fraction of the total amount attributable to Mr. Halder. *United States v. Roy*, 1:21-CR-435 (N.D. Ga.) (Doc. 44).

Second, Mr. Halder arguably could have received a four-level aggravating role enhancement similar to Mr. Roy, which would have significantly raised his guidelines range above the applicable range for Mr. Roy. During this investigation, Mr. Roy participated in a proffer in which he stated that Mr. Halder "developed the scheme to get cash from the EBT cards," "was in control of making the payments to the [co-conspirator] owners," and split the profits from fraudulent transactions conducted at Big Brother Supermarket using Mr. Halder's EBT terminals. PSR ¶¶ 63–64. The government understands that Mr. Halder disputes Mr. Roy's statements, and based on the absence of corroborating evidence, the government did not seek the application of an aggravating role

enhancement for Mr. Halder and does not believe it is proper here. As a result, Mr. Halder both avoided a four-level enhancement and received credit for a two-level reduction under the new zero-point offender reduction pursuant to USSG § 4C1.1, a reduction that did not exist when Mr. Halder chose to flee. *Id.* ¶ 87.

Finally, the differences between Mr. Halder's and Mr. Roy's conduct after charges were filed could not be starker. Shortly after charges were filed against Mr. Roy, he participated in a proffer with the government in which he fully admitted his conduct, accepted responsibility, and provided substantial assistance that supported a Section 5K1.1 reduction. By contrast, Mr. Halder violated his bond conditions, fled to Mexico, and attempted to flee to Istanbul using a fraudulent passport before his capture by foreign authorities. *Id.* ¶¶ 69–72. As a result, Mr. Halder's commission of a new offense based on his flight triggered a combined five-level increase in his offense level, *id.* ¶¶ 82–83, effectively raising his guidelines range from 46–57 months to 78–97 months. His flight thus created a substantial disparity in his guidelines range compared to Mr. Roy's, but this disparity is richly deserved based on Mr. Halder's brazen decision to flee and use a fraudulent passport while on bond in this matter.

## CONCLUSION

Based on a full consideration of the Section 3553(a) factors, the government respectfully recommends that Mr. Halder be sentenced to 72 months' imprisonment.

Respectfully submitted,

RYAN K. BUCHANAN
UNITED STATES ATTORNEY


/s/NATHAN P. KITCHENS
   *Assistant United States Attorney*
Georgia Bar No. 263930
Nathan.Kitchens@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above was prepared using Book Antiqua 13-point font, and that I have caused a copy of the foregoing to be served upon Counsel for the Defendant by electronic filing:

This 13h day of March 2024.

                                              <u>/s Nathan P. Kitchens</u>
                                              NATHAN P. KITCHENS